## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| STAN PIERZCHAJIO,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWESTERN SELECTA, INC.<br><br>Defendant. | CIVIL NO. 17-1682 (PAD) |

### OPINION AND ORDER

Delgado-Hernández, District Judge.

Stan Pierzchajio was employed for approximately nine (9) months with Northwestern Selecta, Inc. ("NWS") as captain of the *Numar*, the company's owners' yacht. After he was let go, he initiated this action complaining of age discrimination under the federal Age Discrimination of Employment Act, 29 U.S.C. § 621 et seq. ("ADEA") and of age discrimination and unjust discharge under Puerto Rico law (Docket No. 23).[1]  Upon conclusion of discovery, both parties moved for summary judgment; NWS as to all claims and Pierzchajio with respect to Law 80 (Docket Nos. 16 and 18).  On March 31, 2019, the court granted in part NWS' motion as to the ADEA and denied plaintiff's motion (Docket No. 58).  Following are the grounds for the court's ruling.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] To wit, Puerto Rico Law 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 et seq.; and Puerto Rico Law 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29, § 185a et seq.

of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought. See, Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013)(so noting). To resist summary judgment, however, the nonmovant must do more than show some metaphysical doubt as to a material fact. See, Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(articulating proposition). Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative, however, will not suffice to ward off a properly supported summary judgment motion. See, Nieves-Romero v. U.S., 715 F.3d 375, 378 (1st Cir. 2013)(applying principle). Based on these parameters, careful record review shows absence of genuine factual dispute as to the facts identified in the section that follows.

## II.    FINDINGS OF FACTS[2]

### A. NWS

NWS imports and distributes proteins, meats, poultry, seafood, dry goods, canned goods, frozen and refrigerated products. See, NWS' "Statement of Uncontested Facts" ("SUMF") (Docket No. 16-1), ¶ 1. It is owned by Elpidio "Petey" Núñez-Batista who serves as NWS' President, his younger brother Ventura Núñez, NWS' General Manager; and their sister Rebeca

---

[2] Except otherwise noted, the facts included in this section are drawn from the parties' Local Rule 56 submissions (Docket Nos. 16-1, 18-1, 24-1, 38, 47). The rule is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). While the district court may "forgive" a violation of Local Rule 56, litigants who ignore the rule do so "at their peril." Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007).

Núñez.  Id. at ¶¶ 2 and 6; Docket No. 24-1, Plaintiff's Additional Statement of Uncontested Facts

("PSAMF") p. 23 at ¶ 1.[3]

## B.  **Plaintiff's Hiring**

In June 2014, Elpidio, Ventura, and Rebeca inherited the *Numar*; a 68- foot Viking brand

pleasure yacht.  See, Docket No. 16-1, SUMF at ¶ 6; Docket No. 18-1, Plaintiff's "Statement of

Uncontested Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment"

("PSUMF") at ¶ 39.[4]  In February 2015, Elpidio contacted Pierzchajio to ask him to be the *Numar's*

captain.  See, Docket No. 16-1, SUMF at ¶ 7.  Elpidio had met Pierzchajio in 2005, when

Pierzchajio was captain of Elpidio's grandfather yacht in Florida.  Id. at ¶ 5.[5]  Following two

interviews, Elpidio decided to hire Pierzchajio after asking for his brother's and sister's opinion.

Id. at ¶¶ 8, 12-13; Docket No. 16-2, p. 32 lines 4-13 and p. 33 lines 3-8.[6]

On March 23, 2015, Pierzchajio started employment with NWS.  See, Docket No. 16-1,

SUMF at ¶ 15; Docket No. 18-1, PSUMF at ¶ 1.  At the time, he was fifty-nine years of age.  See,

Docket No, 16-1, SUMF at ¶ 11.  He was hired for an undefined term, with a yearly base salary of

$68,000.00, $1,000.00 per month for car allowance; $1,000.00 a month for housing; and $50.00 a

month for his cell phone.  Id. at ¶ 10; Docket No. 18-1, PSUMF at ¶ 2.[7]

---

[3] This additional statement was not presented as a separate document itself, but as pages 23-32 of Plaintiff's Counterstatement of Material Facts in Controversy, Statement of Objections and Statement of Additional Facts" (Docket No. 24-1).

[4] Consistently with the parties' submissions, the court refers to Mr. Elpidio Núñez as Elpidio, and to some other persons by their first names.  Similarly, it refers to the *Numar* by its name, as "yacht" or as "boat."

[5] During that period, Elpidio would accompany his grandfather and Pierzchajio on trips.  See, Docket No. 16-1, SUMF ¶ 5.

[6] In Elpidio's words: "[m]y brother gave me his opinion and his input and my decision was based on a number of things, including his opinion.  But, the final decision as president, is mine." When questioned by plaintiff's counsel as to who made the determination of hiring and the discharging plaintiff, he explained that ". . .both situations were solely my, my decisions at the end of the day, but I did ask for my brother and sister's opinion" (Docket No. 16-2, lines 4-10).

[7] He was also offered a medical plan, which he never used.  See, Docket No. 16-1, SUMF at ¶ 10.  Pierzchajio denies this statement, claiming that he was never given medical insurance.  See, "Plaintiff's Counterstatement of Material Facts in Controversy, Statement of Objections and Statement of Additional Facts" ("PCSMF") Docket No. 24-1 at ¶ 10.  As support, he refers the court's attention

### C. **Plaintiff's Employment**

Pierzchajio worked out from Puerto Del Rey in Puerto Rico, the marina where the yacht was docked, and would go to NWS offices for weekly meetings with Nicole López (Elpidio's assistant), to discuss the yacht's business, give or get petty cash, provide receipts and for anything else that needed to be done.  See, Docket No. 16-1, SUMF at ¶¶ 16 and 17.  He had one crew member, the first Joel Cardona, age 45, who was already employed with NWS when Pierzchajio was hired, and then Francisco Millán (a/k/a Javi) age 31.  Id. at ¶¶ 18, 30.

### D. **Operational Incidents**

1. St. Thomas, U.S. Virgin Islands.  On April 3, 2015, while the *Numar* was docked at Yacht Harbor Marina in St. Thomas, U.S.V.I., Pierzchajio's shirt caught the gear shifter and put the boat into motion.  See, Docket No. 16-1, SUMF at ¶ 19.  He reached over and was able to put the gear back in neutral.  Id.  The boat did not, however, hit the dock and there was no physical damage.  Id.  Ten people were on board.  Id.[8]

2. Palomino Island.  On June 27, 2015, during a trip to Palomino island the *Numar* hit the bottom of the ground while Pierzchajio was attempting to anchor it close to the beach.  See, Docket No. 16-1, SUMF at ¶ 20.  He used the boat's thrusters to pivot the boat and waited for the wind to push to deeper water.  Id.  Fourteen people, including Ventura and his friends, were on board.  Id. at ¶ 21.  The next day, Pierzchajio noticed a slight vibration on

---

to his deposition testimony.  Id.  But his testimony confirms ¶ 10 of NWS's SUMF, as he admitted that he had a medical "plan." What he clarified during his deposition, is that he never received a medical plan "card" (Docket No. 16-4, p. 95).  His clarification does not, however, contest the statement.  In any event, whether or not he had a medical *card* is immaterial for purposes of the summary judgment analysis.

[8] According to Pierzchajio, he informed Elpidio of the incident immediately, but the incident "was not even noticed by anyone." See, PSAMF, ¶ 2.  Although NWS admits that Elpidio was present when the incident occurred, and that Pierzchajio informed him of it immediately, it correctly notes that the rest of the PSAMF is unsupported as the record only confirms that Pierzchajio *understood* that no one noticed the incident (Docket No. 47, p. 5).

the starboard side.  Id. at ¶ 22.  The incident caused damage to the yacht, for the propellers

had to be rebalanced, a process that required their removal.  Id. at ¶¶ 23 and 25.[9]  Pierzchajio

acknowledged this incident was his responsibility.  Id. at ¶¶ 24 and 25.  NWS did not request

that he reimburse the company the expenses of rebalancing the propellers.  Id.

3.  <u>Jost Van Dyke</u>.  On September 7, 2015, as the *Numa*r was departing from the beach in

White Bay, Jost Van Dyke, the shaft of the propellers caught the anchor line of the boat

anchored next to it.  <u>See</u>, Docket No. 16-1, SUMF at ¶ 26.  After hearing people from other

boats screaming: "Hey, you snagged a line," Pierzchajio stopped the yacht, and anchored

it in a safe place.  Id.  Then, he and Javi got into the water to see whether there was any

damage and found there was some length of line wrapped around the shaft of the propellers.

Id.  They got a knife and cut it out.  Id.  Eight people were on board, including Elpidio, his

spouse and his three children.  Id. at ¶ 27.  NWS did not take any disciplinary measure

against Pierzchajio in relation to this or the other incidents, and did not speak with or write

to Pierzchajio about them while he was employed with NWS.  <u>See</u>, Docket No. 18-1,

PSUMF at ¶ 10.

**E.  <u>Termination</u>**

Elpidio decided to terminate Pierzchajio 's employment, and on December 18, 2015, NWS

let Pierzchajio go.  <u>See</u>, Docket No. 16-1, SUMF at ¶¶ 29 and 30.[10]  At the time, Pierzchajio was

60 years of age.  Id. at ¶ 29.  Elpidio declared that he decided to discharge Pierzchajio due to the

---

[9] Pierzchajio qualified this narrative stating the body of the boat did not suffer any damage, but rather that the propeller was disbalanced, and the propeller was not repaired but "balanced" (Docket No. 24-1 at ¶¶ 23, 25).

[10] Pierzchajio denies this statement, claiming he was discharged on December 4, 2015.  Still, in his Declaration Under Penalty of Perjury (Docket No. 18-3), he states that "[d]efendant employed me from March 23, 2015 until December 18, 2015." <u>Id.</u>

incidents of April 3, June 27 and September 7, 2015.  Id. at ¶¶ 32-34.  He testified the three incidents made him feel like they were becoming a burden to his group of friends and a safety hazard.  Id.  Further, he understood other boat owners were concerned when the *Numar* approached their boats for rafting.  Id.[11]  Additionally, he wanted to start using the boat more for fishing purposes; in his estimation, Pierzchajio did not possess fishing experience in local waters; and Elpidio believed he needed someone more knowledgeable in this area.  Id.  Pierzchajio, however, alleges Elpidio told him at termination that he was being discharged in order to stop the expense of the boat because Rebeca was complaining about spending money in a boat she was not using.  See, Docket No. 24-1, PCSMF at ¶ 32.[12]

## F.  Replacement

On December 21, 2015, Luis Sobrino, age 30, began employment with NWS as *Numar*'s captain.  See, Docket No. 16-1, SUMF at ¶ 48.  On March 13, 2016, he left the job.  Id. at ¶ 49.  On April 5, 2016, NWS rehired Miguel A. Sanabria, age 56, who had worked for NWS prior to Pierzchajio, as *Numar's* captain.  Id. at ¶ 50.[13]

---

[11] According to NWS, the term "rafting" refers to the practice of anchoring various boats in a beach one beside the other (Docket No. 16, p. 7 n. 1).

[12] During his deposition, Elpidio stated he did not inform Pierzchajio why he was being discharged (Docket No. 24-4, p. 4). Pierzchajio states Elpidio admitted lying to him (Docket No. 25, pp. 17-18). As support, he refers to page 44 of Elpidio's deposition. Id. There is no such admission therein.  See, page 44 of Elpidio's deposition (Docket No. 24-4, p. 8).

[13] NWS states Captain Sobrino resigned because his former employer made him a counter-offer and he went back to work with that entity (Docket No. 16-1, ¶ 49). As support, it cites Elpidio's deposition and NWS' "Answers to Plaintiff's First Set of Interrogatories." Pierzchajio objects that Elpidio does not have personal knowledge and the statement is self-serving and hearsay because NWS did not tender any resignation letter or a resignation related document (Docket No. 24-1 at ¶ 49). Yet resignations need not be in writing, and Elpidio was President of NWS and would personally know if a captain of a yacht he used is serving as such or not. However, Elpidio's testimony does not clarify how he became aware of the reasons he proffered for Captain Sobrino's leaving the job, and NWS' answers to interrogatories do not address the topic. In those conditions, to the extent NWS relies on those reasons for their truth, the fact that they were originally uttered out of court makes them hearsay under Rule 801 of the Federal Rules of Evidence, and the record does not show if they would be admissible under any of the exceptions to the hearsay exclusion rule.  See, Bhatti v. Trustees of Boston University, 659 F.3d 64, 71 (1st Cir. 2011)(discounting inadmissible hearsay from consideration of merits).  On the matter of Captain Sanabria's rehiring, as relevant here Pierzchajio states that Elpidio's declaration is "self-serving" (Docket No. 24-1 at ¶ 50).  But that does not genuinely dispute the fact that NWS rehired Captain Sanabria on the date set forth in the text after Captain Sobrino left the job.

Pierzchajio v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 7

### G. **Complaints**

Pierzchajio did not file any internal complaint with anyone at NWS for discrimination even though it was his understanding that NWS had a policy prohibiting discrimination in the workplace. See, Docket No. 16-1, SUMF at ¶¶ 51-52. Nor did he ever mention to Ventura, Rebeca, Damaris Santiago (NWS Vicepresident of Human Resources), or to anyone else in NWS' management that Elpidio was treating him differently than he was treating other employees. Id. at ¶ 52.

### III.   **DISCUSSION**

### A. **ADEA**

The ADEA makes it unlawful for an employer to "discharge ... or otherwise discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of [his] age." 29 U.S.C. § 623(a)(1). Plaintiffs must "establish that age was the 'but-for' cause of the employer's adverse action." Vélez v. Thermo King, 585 F.3d 441, 446 (1st Cir. 2009)(quoting Gross v. FLB Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). Differently stated, the plaintiff's age must have been the determinative factor as opposed to merely a determinative factor in the employer's decision. See, Goss, 557 U.S. at 168 (so observing). Where, as here, there is no direct evidence of age discrimination, courts may evaluate ADEA claims under the three-stage burden-shifting framework set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See, Vélez, 585 F.3d at 446-447 (articulating formulation).[14]

---

[14] The purpose of the McDonnell Douglass framework is "to compensate for the fact that direct evidence of intentional discrimination is hard to come by." Price Waterhouse v. Hopkins, 490 U.S. 228, 271 (1989)(O'Connor, J., concurring). To offset this difficulty to some degree, it provides a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." Loeb v. Textron, 600 F.2d 1003, 1014 (1st Cir. 1979). When the plaintiff has direct evidence of discriminatory animus, however, "the case may be put to the jury without further ado." Cardona-Jiménez v. Bancomercio de Puerto Rico, 174 F.3d 36, 40 (1st Cir. 1999)(citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)).

Pierzchajio v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 8

Under the McDonnell Douglass framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination.  See, Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir. 1994)(discussing framework).  If a *prima facie* case is established, a rebuttable inference of discrimination arises, switching to the employer the burden of articulating a legitimate, nondiscriminatory reason for the challenged action.  Id. at 720.  This is a burden of production, not of persuasion, such that the employer is merely required to set forth through the introduction of admissible evidence, reasons for its action which would support a finding that unlawful discrimination was not the cause of the challenged employment action.  Id.  An articulation not admitted into evidence "will not suffice."  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n.9 (1981).  A defendant "cannot meet its burden merely through an answer to the complaint or by argument of counsel."  Id.  As a burden of production, however, this burden involves "no credibility assessment."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Should the employer satisfy this burden, the inference arising from the *prima facie* phase drops from the case.  See, Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 (1st Cir. 2000) (so noting).  In that instance, the sole remaining issue "is discrimination *vel non*," which comes front and center.  Vélez, 585 F.3d at 447.  To carry the devoir of persuasion on this ultimate issue, the plaintiff must identify probative evidence that the reason given by the employer for its action is pretextual, that is, not its true reason but is "a pretext for discrimination."  Id.  This step effectively "merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination."  Domínguez-Cruz, 202 F.3d at 430 (quoting Burdine, 450 U.S. at 256).  The McDonnell Douglas division of intermediary burdens "serves to bring the litigants and the court expeditiously and fairly to this ultimate question."  Burdine, 450 U.S. at 253.  The ultimate burden remains with the plaintiff at all times.  Id.

### 1. **First Stage:** *Prima Facie* **Case**

In the context of an ADEA clam for discriminatory firing, to establish a *prima facie* case plaintiff must show that: (i) he was at least 40 years old at the time of the materially adverse action; (ii) he was qualified; (iii) he was fired; and (iv) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services. See, Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015)(analyzing burden). The plaintiff's burden at this stage is "modest." Id.

Pierzchajio satisfied the elements of the *prima facie* case. He was over 40 years of age at the time of the challenged action, was fired, and NWS subsequently filled the position. As for qualifications, NWS points to performance and other issues (Docket No. 16, pp. 9-11). But those problems are immaterial in this stage. First Circuit precedent makes clear the court "may not credit the same evidence that an employer puts forth to show its legitimate, nondiscriminatory reason for firing an employee to defeat that same employee's *prima facie* showing that he was qualified." Soto-Feliciano, 779 F.3d at 24.[15]

In the end, though, considering the low standard needed for a showing of *prima facie* discrimination, Pierzchajio may be said to have been qualified for the position from which he was let go. To be considered qualified, all he had to establish was that he possessed "the basic skills necessary for performance of the job," Owens v. New York City Housing Authority, 934 F.2d 405, 409 (2d Cir. 1991), hardly an issue in this case, because unless he lied to get the job – and there is no evidence that he did – by hiring the employee for the position in question "the employer

---

[15] See also, I Barbara T. Lindemann, Paul Grossman & C. Geoffrey Weirich, Employment Discrimination Law 12-69 (5th Ed. 2012) ("Evidence that the plaintiff was not qualified based on the employer's subjective expectations for the position, or the subjective assessments of the plaintiff's performance, is often reserved for the pretext stage of the analysis").

itself has already expressed a belief that [ ] he is minimally qualified." Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001).  See also, Loeb, 600 F.2d at 1013 n.10 (unless the position has been redefined, the fact that plaintiff "was hired initially indicates that he had the basic qualifications for the job in terms of degrees, certificates, skills and experience").  It is apparent the *prima facie* threshold is met.[16]

### 2. <u>Second Stage: Employer's Response</u>

NWS articulated various grounds in response to Pierzchajio's *prima facie* showing. Pierzchajio's was involved in three operational incidents, which according to NWS, put the owners' families and other people in danger and could have damaged the yacht, in one instance damaging it, or at least its propellers, albeit for Pierzchajio, the propellers were not damaged but disbalanced (Docket No. 16, pp. 11-12).[17]  So Elpidio basically pointed out that Pierzchajio was not performing his duties as expected, lacking the skills necessary to handle the yacht as it related to boating practices in Puerto Rico.  Id.  He felt they were becoming a burden to his group of friends, and understood that other boat owners were concerned when the *Numar* approached their boats for rafting.  Id.  Moreover, he stated that he wanted someone more knowledgeable on fishing in local waters to increase the frequency the boat was used for fishing.  See, SUMF at ¶¶ 32-34.[18]

NWS met its burden of producing legitimate, nondiscriminatory grounds to dispel the inference of discrimination triggered by the *prima facie* case.  See, Fitzpatrick v. National Mobile Television, 364 F.Supp.2d 483, 492 (M.D.Pa. 2005)(termination of truck driver after three

---

[16] Consistently with this conclusion, as noted above, Pierzchajio had served as Elpidio's grandfather's yacht's captain, which led Elpidio to consider him for the job.

[17] Pierzchajio acknowledged the importance for boat owners to feel safe and secure with the captain (Docket No. 16-4, p. 25).

[18] In his deposition, Elpidio expressed that he felt fishing was not important when Pierzchajio was hired, but that it became important thereafter (Docket No. 16-2, p. 19).

accidents in a short period of time considered legitimate, non-discriminatory reason for the
employer's decision to terminate driver's employment); Rogosin v. Mayor, City Council of
Baltimore, 197 F.Supp.2d 345, 351 (D.Md. 2002)(employer has right to consider plaintiff-
employee's projection of "negative public image"); Loeb, 600 F.2d at 1012 n.6 (the employer may
fire an adequate employee if his reason is to hire one who will be even better).  An employee
initially qualified for the job may have thereupon performed unsatisfactorily, justifying the
employer's decision to dismiss the employee.  See, Menzel v. Western Auto Supply Co., 662
F.Supp. 731, 742 (D. P. R. 1987)(applying principle), aff'd 848 F.2d 327 (1st Cir. 1988).

### 3. **Final Stage**

With this background, it was incumbent upon Pierzchajio to present evidence sufficient to
permit a reasonable jury to conclude that NWS' given reasons for his termination are pretextual
(not what the employer asserted) but rather discriminatory animus based on his age.  See,
Mélendez, 622 F.3d at 50 (examining issue).  A plaintiff may establish pretext by showing that the
employer's proffered explanation is "unworthy of credence."  Burdine, 450 U.S. at 256.  He may
do so in a number of ways, including showing: (i) that the employer "gave different and arguably
inconsistent explanations" for its actions, Collazo-Rosado v. University of Puerto Rico, 765 F.3d
86, 93 (1st Cir. 2014); (ii) that the employer "deviated inexplicably from one of its standard
business practices," Kouvchinov v. Parametric Technology Corp., 537 F.3d 62, 68 (1st Cir. 2008);
or (iii) "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the
employer's proffer, Echevarria v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 135 (1st Cir.
2017).  Plaintiff "can use the same evidence to show both pretext and discriminatory motive
provided the evidence is adequate to enable a rational factfinder reasonably to infer that unlawful

discrimination was a determinative factor in the adverse employment action." Pina v. Children's Place, 740 F.3d 785, 797 (1st Cir. 2014).

Pierzchajio approaches this issue from various angles.  He states NWS has presented shifting explanations for its decision to fire him.  On NWS' version, Pierzchajio was terminated because he was not performing as expected and the company had plans for which he was not well qualified (Docket No. 46, p. 9).  As previously mentioned, Elpidio expressed he decided to fire Pierzchajio due to the three incidents the yacht was involved in during the short period that Pierzchajio was employed as its captain, which according to Elpidio, basically lead to loss of trust in Pierzchajio, and to the belief that Pierzchajio lacked the skills necessary to handle the yacht as it related to boating practices in Puerto Rico.  Id.  He considered Pierzchajio a safety hazard; understood that other boat owners were concerned when the *Numar* approached their boats for rafting; and asserted he wanted someone more knowledgeable on fishing in local waters to use the boat more for fishing.  Id.

In contrast, Pierzchajio alleges that nobody from NWS mentioned anything to him about these incidents or respecting lack of boating or fishing skills during his employment with NWS or when he was discharged (Docket No. 24-1, p. 25).  Instead, he claims Elpidio informed him that he was being discharged in order to stop the expense of the boat because Rebecca was complaining about spending money in a boat she was not using.  Thus, as in Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000), the conflicting versions give rise to an inference of pretext favorable to Pierzchajio under Rule 56 of the Federal Rules of Civil Procedure.[19]

---

[19] In Domínguez-Cruz, 202 F.3d at 424, the First Circuit concluded that the evidence permitted a finding of pretext in part because when plaintiff was informed by his direct supervisor that he was being dismissed, he was told the position was eliminated as a result of a restructuring plan, but when plaintiff met with the Chief Executive Officer and President of the Board of Directors a week or so later, he was told that while there had been some complaints about his performance, they were not important.  Id. at 431.  Notwithstanding the initial inconsistency, when the employer answered the complaint it denied that plaintiff had been

Pierzchajio v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 13

Additionally, Pierzchajio asserts the court should reject NWS' account of reliance on the three operational incidents as unworthy of credence because even though the incidents were immediately known to NWS, contrary to its own rules NWS failed to apply immediate disciplinary measures and allowed the boat to be used (Docket No. 25, pp. 8-10, 14-15).  He contends that: NWS has a Handbook which contains a disciplinary proceeding predicated on progressive discipline, a "disciplinary style … intended to get back to normal any disciplinary problem that may alter the organization['s] wellbeing;" this approach requires that the employee be given previous verbal and written warnings before taking several disciplinary measures such as a discharge except in cases of gross misconduct; there was no gross misconduct here; and because NWS did not provide him with progressive discipline, NWS violated its own policies.  Id. at 8-10.

NWS argues the Handbook provides, among other things, that the disciplinary action to be taken will be proportional to the severity of the fault, which in its view, means that a decision for a disciplinary problem may place itself at any point of the process that best applies, and there will be situations in which the gravity of the fault will require immediate termination without applying the principle of progressive discipline (Docket No. 46, pp. 7-8).  Along the same line, it explains

---

discharged as a result of restructuring, instead claiming that he was terminated for his repeated failure to abide by company policies and to commit to the team efforts as required.  Id.  Moreover, at another point in the answer, it stated that plaintiff's termination was determined exclusively because of his violations to company policies, referring to his inability to commit to the managerial efforts directed by the parent corporation, covering up employee misconduct which required termination, and his failure to abide by previous commitments to his immediate supervisor with respect to team work and reorganization.  Id.  Further, plaintiff's immediate supervisor stated during his deposition that the reason for the termination was performance.  Id. at 432.  But in another point, he said that he told the employees of the corporation, other than the executive staff, that the dismissal was not related to performance.  Id.  Later, though, he indicated that plaintiff was fired because of his refusal to take the direction that the company was going and insubordination.  Finally, he referred to plaintiff's failure to abide by company policies.  Id.  The CEO and President of the Board testified in the deposition that plaintiff was doing a good job and was very adequate and the primary reason for the termination was always that the company wanted to eliminate the position, which it did not think was necessary any more.  Id.  Similarly, the First Circuit in Vélez, 585 F.3d at 441, found pretext in part because the employer did not initially provide plaintiff with any reason for firing him, but one month later, the company's human resources director told the Equal Employment Opportunity Commission and the Antidiscrimination Unit of Puerto Rico's Department of Labor and Human Resources, that plaintiff had been fired for violating the company's policy on receiving gifts from suppliers.  Id. at 49.  And in responding to the lawsuit over a year later, the company said for the first time that plaintiff had been fired for stealing and selling company property.  Id.  To be sure, Elpidio testified he did not inform Pierzchajio of the reasons for termination (Docket No. 24-1, p. 4).  But as the record stands, there are conflicting versions of what was said when Pierzchajio was fired.

that among the causes of progressive discipline, the Handbook includes lack of efficiency in the

performance of work and any negligent action or omission that causes damage on NWS' property

or to other employees or visitors, or that puts the property or persons at risk, but the Handbook

qualifies this by stating that any violation generally carrying progressive discipline may be reason

for immediate dismissal depending on the consequences, severity and/or effects of their economic

or moral nature, seriousness or significance for the Company.  Id.  Thus, it reasons that, contrary

to what Pierzchajio has stated, the Handbook does not limit dismissal without previous verbal and

written warnings to instances where gross negligence is present.  Id. at 8.  Pierzchajio replies that

if the incidents were to have been considered cause for immediate termination, NWS would not

have waited six months after the first incident and three months after the last incident to discharge

him (Docket No. 25, pp. 8-10).

     While as noted earlier, an employer's inexplicable deviation from one of its standard

business practices is relevant to the pretext inquiry, whether any such deviation occurred with

regard to the company's handling of the incidents under the Handbook is an open question,

beginning with the issue of what the established operating procedure was.  See, Rodríguez-Cuervos

v. Wal-Mart Stores, Inc., 181 F.3d 15, 22-23 n.4 (expressing reservations – "we are not convinced"

– that the language in the employer's Handbook was definitive enough to establish the standard

operating procedure claimed by plaintiff).  Cf. Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d

128, 142 (1st Cir. 2012)(conflicting evidence raised a contested issue of material fact as to

employer's disciplinary procedures) with Kouvchinov, 537 F.3d at 68-69 (plaintiff did not show

existence of a standard policy or practice).  As with the question posed by the different

explanations for the firing, the conflicting accounts of the way the disciplinary procedure operated

and was handled by the employer results in an inference of pretext favorable to Pierzchajio under Rule 56 of the Federal Rules of Civil Procedure.[20]

From this point, Pierzchajio contends that because he established a *prima facie* case and presented evidence that the employer was "mendacious," summary judgment cannot be entered under Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)(Docket No. 25, pp. 12, 13, 16-17).   In that case, the Supreme Court held that a plaintiff's *prima facie* case of age discrimination combined with sufficient evidence for a reasonable factfinder to reject the employer's proffered explanation may be adequate to support a finding of intentional discrimination.  Id. at 147-148.  Properly read, however, Reeves does not support Pierzchajio's contention.  To understand why, it is helpful to examine Reeves in light of the McDonnel Douglas framework within which the Supreme Court analyzed the case.[21]

Through the McDonnell Douglas framework a plaintiff can avoid dismissal by presenting a "minimal" *prima facie* case without evidence of discrimination.  As stated above, the minimal case is satisfied by a showing of membership in a protected class, qualification for the position, an adverse employment action, and in a termination, the employer's filling of the position.  By making out the *prima facie* case, a plaintiff without evidence of discrimination activates a presumption that the employer unlawfully discriminated against him, placing upon the employer the burden of

---

[20] Pierzchajio attacks as a lie the asserted intent to increase the frequency of fishing trips, noting that Elpidio went fishing with Pierzchajio's immediate successor (Captain Sobrino) only once (Docket No. 25, p. 10).  As support, he directs the court to page 61 of Elpidio's deposition.  Id.  Therein, Elpidio initially asserted that he went out fishing with Captain Sobrino once, but later pointed out it was three or four times (Docket No. 16-2, p. 29).  Then, he stated to have gone out fishing with Pierzchajio two times.  Id. From "Trip Notes" attached to Pierzchajio's Counterstatement (Docket No. 24-7), it seems the *Numar* stopped for fishing during six trips while Pierzchajio was employed with NWS (March 30, 2015, Docket No. 24-7, p. 6; April 3, 2015, Docket No. 24-7, p. 8; July 3, 2015, Docket No. 24-7, p. 15; July 4, 2015, Docket No. 24-7, p. 16; September 4, 2015, Docket No. 24-7, p. 22; and October 16, 2015, Docket No. 24-7, p. 26).  The notes do not, however, specify if or when Elpidio was onboard during those trips.  At the end of the day, the frequency of fishing trips does not help Pierzchajio, as Captain Sobrino stayed only three months on the job and there is no evidence about fishing trips after Captain Sobrino resigned and was replaced with Captain Sanabria.

[21] Reeves involved a motion for judgment as a matter of law.  However, the substantive standard for judgment as a matter of law mirrors that of summary judgment.  Anderson, 477 U.S. at 251-252 (examining issue).

proffering a nondiscriminatory reason for its action.  If the defendant fails to discharge this burden, the plaintiff prevails.  See, James v. New York Racing Association, 233 F.3d 149, 154 (2d Cir. 2000)(analyzing topic).

Once the employer articulates a nondiscriminatory reason for the action, the presumption "drops out of the picture."  Reeves, 530 U.S. at 143.  The employer "will be entitled to summary judgment (or to overturning a plaintiff's verdict), unless the plaintiff can point to evidence that 'reasonably supports a finding of prohibited discrimination.'"  James, 233 F.3d at 154.  So a case under the ADEA becomes like any other case in that to prevail, the plaintiff "must have evidence from which the factfinder can reasonably find the essential elements of the claim."  Id.  But given that the requirements of *a prima facie* case are so minimal and there are many reasons why employers give false reasons or reasons a factfinder may not find persuasive for an adverse employment action, evidence contradicting the employer's given reason, without more, "does not necessarily give logical support for an inference of discrimination."  Id.  Thus, as the First Circuit observed in Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 8 (1st Cir. 2000), a case where plaintiff was assumed to have made a *prima facie* showing, pretext is not enough to allow a plaintiff to defeat summary judgment when it only suggests that the employer fired plaintiff for some reason unrelated to the grounds the employer articulated in response to the *prima facie* case, but does not shed light on what the employer's true reason for firing plaintiff was, let alone show that the reason was a prohibited reason.  Id.

At this level of inquiry, then, a plaintiff is not entitled to trial or verdict simply by satisfying the minimal McDonnell Douglass standard and presenting evidence of falsity of the employer's proffered reason.  See, James, 233 F.3d at 154 (articulating proposition).  That the "employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that

the plaintiff's proffered reason …[that is, age] is correct." Hicks, 509 U.S. at 521. Pretext "means pretext for discrimination," requiring the plaintiff to persuade the court "that [he] has been the victim of intentional discrimination." Id. at 516. In consequence, the standard for determining whether the evidence is sufficient to sustain submission of the plaintiff's case to the jury is "whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." James, 233 F.3d at 156. Evidence satisfying the minimal McDonnell Douglas *prima facie* case coupled with evidence of falsity of the employer's explanation may or may not be sufficient to sustain a finding of discrimination. Id.

Reeves applies this proposition. Doing so, the Supreme Court reversed the Fifth Circuit's decision to overturn a plaintiff's verdict on an ADEA claim. See, 530 U.S. at 139-140, 154 (describing decision and disposition). It stated at the outset of its opinion that it sought to decide "whether a defendant is entitled to judgment as a matter of law when the plaintiff's case consists exclusively of a *prima facie* case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action." Id. at 137. It went on to provide a a factual and procedural narrative of the litigation (id. at 137-140); noted that there existed a conflict among the Courts of Appeals concerning the question at issue (id. at 140-141); examined the ADEA (id. at 141); and analyzed the McDonnell Douglass framework (id. at 141-143) applying it to the evidence in the record. Id. at 143-145.

Focusing on this progression, the Supreme Court explained that in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the employer's explanation that the employer is dissembling to cover up a discriminatory purpose. Id. at 147. And it held that a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully

discriminated.  Id. at 148.  But it did not end there, instead warning that "[t]his is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability" and that "there will be circumstances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."  Id.  Thus, it concluded that whether judgment as a matter of law is appropriate will depend on a number of factors, including the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.  Id. at 148-149.

From this perspective, Reeves rejected the proposition that a *prima facie* case plus evidence of falsity is never sufficient to show discrimination.  See, Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000)(so observing in process of examining Reeves).  Yet as the court in Abramson expressed, that does not mean that "*no* ADEA defendant may succeed on a summary judgment motion so long as the plaintiff has established a *prima facie* case and presented evidence of pretext."  Id.  Rather, courts must follow a case-by-case approach and examine the entire record in order to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."  Id. (quoting Reeves, 530 U.S. at 143 while citing Vadie v. Mississippi State University, 218 F.3d 365, 374 n.23 (concluding after Reeves, that a *prima facie* case plus pretext evidence may be enough to permit a finding of discrimination, but will not always be sufficient, with the ultimate issue remaining

whether the evidence in the record as a whole creates a reasonable inference that age was a determinate factor in the actions of which plaintiff complains)).[22]

The First Circuit follows the same approach. See, Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994)(observing that in some cases, a *prima facie* case and the disbelief of pretext "could provide a strong enough evidence of actual discrimination to permit the factfinder to find for the plaintiff"). And Reeves is one of those cases, for after the McDonnell Douglass presumption disappeared from that case, the record showed that the plaintiff was 57 years of age at termination, had been employed for the defendant 40 years, was dismissed for the stated reason of bad record-keeping, there was a substantial showing that the employer's explanation was false, and the employer had favored younger employees who had similar performance issues. See, Reeves, 530 U.S. at 137-139, 142-146, 151-152 (describing evidence). Further, the decisionmaker had made age-based comments about plaintiff ("so old he must have come over on the Mayflower" and "too damn old to do [his] job"), and the employer successfully hired three persons in their thirties to fill plaintiff's position. Id. at 143, 151.

With this record, the plaintiff in Reeves did not need additional evidence to prevail. The evidence permitted a rational factfinder to conclude, as it did during trial, that plaintiff was fired for a prohibited reason, which is why, in the Supreme Court's words, "[g]iven that [plaintiff] established a *prima facie* case of discrimination, introduced enough evidence for the jury to reject [the employer's] explanation, and produced … evidence of age-based animus, there was sufficient evidence for the jury to find that [the employer] had intentionally discriminated." Id. at 153-154.

---

[22] See also, St. John v. Napolitano, 20 F.Supp.3d 74, 89-90 (D.D.C. 2013)(the question of whether the plaintiff has met his burden of showing that the employer's asserted nondiscriminatory reason was not the actual reason and that instead the employer intentionally discriminated against him on a prohibited basis is to be considered in light of all the evidence in its full context).

Therefore, a plaintiff's case under the ADEA "inevitably stands or falls based upon the strength of his evidence that the actual trigger for the discharge was age-based animus."  Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 100 (1st Cir. 2002).  The plaintiff cannot avert summary judgment if the record is devoid of "evidence of discriminatory animus on the part of the employer."  Goldman v. First Nat. Bank of Boston, 985 F.2d 1113, 1118 (1st Cir. 1993).

Viewed in light most favorable to Pierzchajio, the evidence in the present action differs significantly from that which the Supreme Court examined in Reeves.  Initially, he made a *prima facie* case, and there is a genuine issue of material fact as to what Elpidio told him when he informed Pierzchajio of his firing, which works for Pierzchajio in this context as a showing of pretext.[23]  As for Elpidio's reference to knowledge about local water-boating practices and fishing skills, Pierzchajio filed two conclusory declarations under penalty of perjury and an employment history sheet.

The first declaration states in part that Pierzchajio possesses "sufficient skills in boating and fishing to handle the boat" (Docket No. 24-5, pp. 1-2).  The second declaration states that "[f]ishing techniques and practices are the same in any part of the Caribbean … "[Pierzchajio] knew these techniques and practice[s]," and "[t]he only thing that changes is to know the places to fish within an area and this [was] … not a problem because the practice in the whole world is to ask other fishermen for the places and mark then in the GPS " (Docket No. 24-6 at ¶ 1).[24]  The employment history sheet includes eleven entries, only one of which refers to fishing, entry

---

[23] Yet Pierzchajio was involved in the incidents that NWS has invoked as grounds for decision, and albeit he attacks how NWS applied the Handbook to those incidents, NWS genuinely contests Pierzchajio's interpretation of the Handbook and how it was applied –or not applied– here.

[24] There is no explanation in the record for why Pierzchajio decided to file two declarations under penalty of perjury, one dated May 15, 2018, the other May 30, 2018, instead of one declaration containing the information he spread in two.

number two, which reads "Jan 05 - Aug 10 … engaged in fishing … activities," without detailing

what those activities were or specifying what they consisted of.  Given that the evidence must be

evaluated in light of Rule 56 of the Federal Rules of Civil Procedure, the court assumes Pierzchajio

had the knowledge and the skills that he claims.  But he came up short, because there is no evidence

on how his successors compared with him on these items.  See, Burdine, 450 U.S. at 258

(concluding court of appeals erred in requiring defendant to prove that the person hired or

promoted was more qualified than the plaintiff, as it is the plaintiff's task to demonstrate that

similarly situated employees were not treated equally).[25]

Finally, even though Pierzchajio was replaced by a significantly younger captain, that

captain left the job some three months later and was replaced by a contemporary of Pierzchajio,

who had been previously employed as Captain with NWS.  *Cf.* Reeves, 530 U.S. at 142 (employer

that successfully hired three persons in their thirties to fill 57-year old plaintiff's position found

liable) *with* Abramson, 232 F.3d at 91 (dismissing age discrimination claim of plaintiff replaced

by the person he originally replaced).[26]  The prima facie and pretext aspects of the litigation do not

show age animus, and neither does the remaining evidence in the case.

---

[25] The comparison is relevant, for "it is not discrimination to replace a worker with a more qualified worker."  De la Cruz v. NYC Human Res. Adm., 82 F.3d 16, 22 (2d Cir. 1996); Loeb, 600 F.2d at 1012 n.6 (acknowledging principle).

[26] Pierzchajio objects that he was replaced by Captain Sobrino, who was significantly younger, not by Captain Sanabria, a contemporary of his who had previously worked for NWS, and in turn replaced Captain Sobrino barely three months following Pierzchajio's firing (Docket No. 24-1 at ¶¶ 49, 50).  But *Reeves* did not limit the replacement focus to plaintiff's immediate replacement, considering instead plaintiff's successors.  Pierzchajio seems to suggest that Captain Sanabria's rehiring is suspect because the rehiring took place after the present case was in the Equal Employment Opportunity Commission (Docket No. 24-1 at ¶ 50).  But there is no dispute at all that Captain Sanabria was hired in March 2016 after Captain Sobrino left the position, and there is no evidence that NWS somehow arranged to have Captain Sobrino removed in order to rehire Captain Sanabria.  Drawing all reasonable inferences in favor of plaintiff at summary judgment "does not include bald assertions or rank conjecture."  Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007)

### 4.   Hiring/Firing: Same Actor

The plaintiff in <u>Reeves</u> was approximately 17 years of age when hired and 57 when fired. By contrast, Pierzchajlo was 59 when hired and 60 when fired.  And the same individual who decided to terminate Pierzchajlo's employment decided to hire him months earlier, which brings to the fore a "same actor" inference.  The inference is recognized in cases where the person who decides to hire the plaintiff is the same person or "same "actor" who decides to terminate plaintiff's employment.  <u>See</u>, Barbara T. Lindeman & David D. Kadue, Age Discrimination in Employment Law (2003), pp. 385-387 (discussing topic); I Employment Discrimination Law, <u>supra</u> at pp. 2-99 – 2-100 (same).

As the Fourth Circuit has explained, "claims that employer animus exists in termination but not in hiring seem irrational," and for the same reason, "[i]t hardly makes sense [for a putative discriminator] to  hire workers from a group that he dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."  <u>Proud</u> v. <u>Stone</u>, 945 F.2d 796, 797 (4th Cir. 1991).  <u>See also</u>, <u>Grady</u> v. <u>Affiliated Cent., Inc</u>., 130 F.3d 553, 560 (2d Cir. 1997)(stating that where the same person made the decision to hire and fire a plaintiff, it is "difficult to impute to her an invidious motivation").  The First Circuit acknowledged the inference in <u>LeBlanc</u> v. <u>Great American Ins. Co.</u>, 6 F.3d 836, 847 (1st Cir.1993).

Courts have identified a strong version and a weak version of the "same actor" inference. In connection with the former, <u>see</u>, <u>Proud</u>, 945 F.2d at 798 ("there is a *powerful* inference relating to the 'ultimate question' that discrimination did not motivate the employer, and the early resolution of the question need not be derailed by strictly fealty to proof of schemes")(emphasis added).  By contrast, the weak version "treats the same actor circumstance as a piece of evidence like any other, not entitled to any presumptive value."  <u>Ortiz-Rivera</u> v. <u>Astra Zeneca LP</u>, 596

F.Supp.2d 231, 248 (D.P.R. 2009).   The inference is less compelling the longer the hiring has preceded the termination.   See, Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir. 1995)("…[T]he length of time between the hiring and firing of an employee affects the strength of the inference that discrimination was not a factor in the employee's discharge"). *Cf.* Proud, 945 F.2d at 797 (six months provides for strong inference) *with* Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137-138 (2d Cir. 2000)(seven years between hiring and firing cannot support summary judgment).

Pierzchajio contends the First Circuit has not accepted the "same actor" inference, stating that in Le Blanc, 6 F.3d at 836, the Court mentioned but did not apply or adopt the inference (Docket No. 25, p. 18).  Not so, for the First Circuit stated in part that "Le Banc points to nothing in the record to suggest why Conte, who, in January 1989, approved LeBlanc's transfer, at Great American expense, to eastern Massachusetts and his corresponding sixteen percent pay raise, would develop an aversion to older people less than two years later …" Id. at 847.  As support, it cited Lowe, 963 F.2d at 173, 175, and Proud, 945 F.2d 796, with the following direct quote from Proud: "[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not the adverse action taken by the employer." Id.  And it went on to reject plaintiff's age discrimination claim, expressing that "[o]n the record before us, Le Blanc has adduced insufficient evidence for a reasonable trier of fact to infer that Great American's decision to terminate his employment … was motivated by age animus.  In other words, '[t]he evidence presented by [LeBlanc], viewed in the light most valuable to him, [fails] to create a genuine issue of material fact as to whether 'but for his employer's motive to discriminate against

him because of this age, [LeBlanc] would not have been discharged. The district court's decision to enter summary judgment in Great American's favor was proper." Id. at 849.

That said, the First Circuit has not weighed in on the issue of the inference's strength. See, Ortiz-Rivera, 596 F.Supp.2d at 248 (so noting).[27] But regardless of which version – strong or weak – is applied here, there is no genuine dispute that Elpidio is the "same actor" and that the relevant decisions – the decision to hire and the decision to fire – were made approximately nine months of each other, the former when Pierzchajio was 59 years of age, the latter when he was 60 years of age.[28] Contrary to the situation in Reeves, where plaintiff had been hired at age 17 and worked 40 years for the employer, the same actor circumstance undermines the assertion that the employer acted out of age animus. See, LeBlanc, 6 F.3d at 847 (applying "same actor" inference as one of the grounds to dismiss age discrimination claim where hiring for the position preceded termination by two years); Lowe, 963 F.3d at 174 (plaintiff was almost fifty-two years old when hired and almost fifty-four when he was fired by the same individuals who hired him); Anderson v. Hertz Corp., 507 F.Supp.2d 320, 330 (S.D.N.Y. 2007)(the same manager who hired plaintiff in March 2002 fired him just over ten months later).[29]

---

[27] On the First Circuit's references to the "same actor" inference after LeBlanc, see Pina, 740 F.3d at 796 n. 10 (describing "same actor" inference, noting that the district court applied it, and stating that although it found plaintiff's argument as to why the inference did not apply unpersuasive, it did not have a need to decide the matter because even without awarding the defendants the benefit of the inference, plaintiff's discriminatory termination claim still failed); and Kelley v. Airborne Freight Corp., 140 F.3d 335, 351 (1st Cir. 1998)(affirming district court's exclusion of "same actor" inference in jury instruction requested by defendant, noting that although a district court may be allowed to use the instruction in appropriate circumstances it felt confident that absence of the instruction could not have confused or misled the jury as to the controlling law)(citing in part, Buhrmaster, 61 F.3d at 464)(not error to include "same actor" inference in a jury instruction)).

[28] Pierzchajio argues there is a genuine dispute as to whether Elpidio was the decisionmaker rather than members of the estate (Docket No. 25, p. 18). If there is a dispute, it is not genuine, for in that case, members of the estate would have been the decisionmakers on both sides of the equation, that is, at hiring and at termination. See, Antonio v. Sygma Network, Inc., 488 F.3d 1177, 1183 (10th Cir. 2006)(summary judgment dismissing discrimination and retaliation actions in a case where the same individuals who hired plaintiff decided to terminate her employment); Lowe, 963 F.2d at 174 (dismissing age discrimination claim in part because the same people who hired plaintiff fired him).

[29] See also, Roberts v. Separators, Inc., 172 F.3d 448, 452 (7th Cir. 1999)(one year between hiring and firing); Antonio, 488 F.3d at 1183 (roughly ten months between hiring and termination).

Pierzchajio asserts that even with the same actor inference a jury could find age discrimination (Docket No. 25, p. 19).  He alleges Elpidio did not want him as captain but to bring the boat to a high standard.  Id. at p. 18-19.  He observes the boat had been unused since June 2014; needed a lot of repairs; and when Elpidio brought him to Puerto Rico, Elpidio's main concern was for Pierzchajio to handle the repairs.  Id. at p. 17.  He posits that is why when the major repairs were done by the beginning of December 2015, Elpidio discharged Pierzchajio; "invented" a theory of ancient incidents; and hired a young captain even before the discharge.  Id. at 19.  Additionally, he states that since about six months into the job, the insurance company was not aware that he was the captain, which shows NWS did not intend to keep him as captain.  See, Docket No. 16-1, SUMF at ¶ 44; Docket No. 16-5, pp. 25-26, 28.

What Pierzchajio complains of does not neutralize or undermine the same actor inference. On the one hand, if Pierzchajio's account of Elpidio's reason for hiring him were true, completion of the task for NWS' bringing of Pierzchajio onboard would be a legitimate ground for termination. See, E.E.O.C. v. A. Sam & Sons Produce Co., Inc., 872 F.Supp.29, 38 (W.D. N.Y. 1994)(completion or near completion of the major project on which employee worked considered legitimate, nondiscriminatory reason for employee's dismissal); Taylor v. Anderson, 2012 WL 2567106, *3 n.9 (E.D. Pa. July 3, 2012)(completion of census that plaintiff was hired for recognized as legitimate, nondiscriminatory reason for plaintiff's termination).  On the other hand, if the ground that Pierzchajio asserts Elpidio had to hire him were considered pretextual due to inconsistency with the reasons that NWS has asserted to fire Pierzchajio, that ground would be linked to Elpidio's desire to take advantage of Pierzchajio's skills to repair the boat, not to Pierzchajio's age.

More important, the inconsistency would not negate the fact that, at the end of the day, Elpidio did decide to hire Pierzchajio to be the *Numar's* captain when Pierzchajio was 59 years of age and decide to fire him nine months later, when Pierzchajio was 60.  Consequently, the same actor inference would still apply.   See, Abramson, 232 F.3d at 88, 91 (dismissing age discrimination action after acknowledging that jury could find employer's reason for firing plaintiff pretextual, due to lack of evidence to conclude that age was a determinative factor in defendant's decision to fire him, a conclusion based in part on the fact that the same individual who had hired plaintiff when he was 60 years of age fired him thereafter).[30]

## 5. **Comparable Treatment**

Contrary to Reeves, there is no evidence that similarly situated younger employees were treated differently in any material way.  See, Vélez, 585 F.3d at 451 ("An employer's disparate treatment of employees in response to behavior that legitimately offends the employer can provide evidence of discriminatory animus").  In order to be probative of discriminatory animus, however, an assertion of disparate treatment must rest on proof that the proposed analogue is similarly situated "in all material respects."  Rodríguez-Cuervos, 181 F.3d at 21.  This entails showing that the individuals with whom a plaintiff seeks to be compared were subject to the same standards and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them for it.  Id.  In that scenario, a plaintiff must show that a substantially younger, similarly situated employee was treated more favorably than he was.

---

[30] See also, Baldenegro v. Tutor-Saliba Corp., 2013 WL 459203, *7 (D. Nev. Feb. 4, 2013)(dismissing retaliation claim because plaintiff could not connect the adverse action – her layoff upon completion of a project- to the assertedly prohibited reason for the employer's action: retaliation for claims brought against a coworker).

Pierzchajio claims that Javi, the deckhand, was involved in the same operational problem as he was in Palomino, having led him to where the water was supposed to be less deep in that area, but was not disciplined (Docket No. 24-1, p. 24; Docket No. 25, p. 13).   However, the comparison with Javi is inapt.   He was the deckhand, not the yacht's captain, which Pierzchajio was; and Pierzchajio admitted that as Captain, it was he who had the final responsibility for accepting the deckhand's suggestions (Docket No. 16-4, p. 14).   Also, he admitted that crew members were under his supervision (Docket No. 25, p. 15).   Thus, Pierzchajio should compare himself with a captain, not with a deckhand.   See, Lowe v. J.B. Hunt Transport., Inc., 963 F.2d 173, 175 (8th Cir. 1992)(rejecting attempt by a terminal manager to compare himself to an employee who was not a terminal manager); Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 182 (1st Cir. 1989)(affirming summary judgment where plaintiff failed to demonstrate that "comparatively credentialed" employees received more favorable treatment).[31]   Additionally, Pierzchajio complains that:

> a.   After the incident in Palomino, Elpidio went to Javi, the deckhand, to ask him what had happened, instead of asking Pierzchajio, the captain, directly.   See, Docket No. 16-1, SUMF at ¶ 41(a).[32]

---

[31] See also, García-García v. Costco Wholesale Corporation, 878 F.3d 411, 424-425 (1st Cir. 2017) (dismissing discrimination claim in part because plaintiff failed to show that other similarly situated employees were treated differently); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 174 (1st Cir. 2003)(rejecting discrimination claims of plaintiff unable to show that other similarly situated employees outside of the protected group were treated differently); Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47-48 (1st Cir. 2002)(summary judgment dismissing discrimination claim of plaintiff whose employment terminated but could not show that employer treated him differently than it treated other similarly situated employees).

[32] Pierzchajio acknowledged that he did not participate in that conversation and has no personal knowledge of its content.   See, Docket No. 16-1, SUMF at ¶ 41(a).

  b. When they were at the back of the boat and Elpidio would say to the deckhand: "Hey, Javi, come and check this out" but would not call Pierzchajio over. Id. at ¶ 41 (b).

  c. On one occasion in the beach in Jost Van Dyke, Elpidio was in the water and Pierzchajio put some drinks in a cooler, went to get them some drinks and Elpidio physically moved away from him. Id. at ¶ 41 (c).

  d. In another instance in Jost Van Dyke, Pierzchajio asked Elpidio whether he wanted a drink and he said: "No"; then, turned around to Javi, the deckhand, and asked him to get him a drink. Id. at ¶ 41(d).

  e. Once in Jost Van Dyke, Elpidio was cooking meat and he said: "Javi, come on over and try this" and would not ask Pierzchajio. Id. at ¶ 41 (e); Docket No. 24-1, PCSMF at ¶ 36(b).

  f. Elpidio would communicate with the deckhand instead of with him to ask questions about the weather, destinations or things to do with the boat. See, Docket No. 16-1, SUMF at ¶ 42; Docket No. 24-1, PCSMF at ¶ 36(b).

  g. Elpidio was short with Pierzchajio, meaning that when Pierzchajio tried to engage in a conversation with him, Elpidio would say "yes" or "no" and walk away. See, Docket No. 16-1, SUMF at ¶ 43; Docket No. 24-1, PCSMF at ¶ 36(b).

  h. Elpidio "…hang[ed] out with a younger crowd" such as the deckhand and Elpidio's guests. See, Docket No. 16-1, SUMF at ¶¶ 36,40; Docket No. 24-1 at ¶ 40.

In the main, all this reflects is simple lack of good manners. But that type of behavior is not violative of antidiscrimination laws. See, Austin v. Wal-Mart Stores Texas, L.P., 2006 WL 2859367, *8 (N.D. Texas Oct 5, 2006)(unkind behavior is not indicative of age discrimination).

Pierzchajio v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 29

Workplace events are not materially adverse just because the employee dislikes them.   See,
Burlington Northern and Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006)(petty slights, lack
of good manners, and snubbing not normally actionable); Johnson v. Weld County, Colorado, 594
F.3d 1202, 1216 (10th Cir. 2010)(Gorsuch, J.)(that plaintiff's supervisors gave her the cold shower,
sat farther away from her at meetings, became too busy to answer her questions, and generally
tried to avoid her, insufficient to sustain plaintiff's claim); Recio v. Creighton University, 521 F.3d
934, 940-941 (8th Cir. 2008)(silent treatment by other faculty members and plaintiff's exclusion
from a picture of the faculty posted on its website amount to no more than nonactionable petty
slights); Ulrich v. Moody's Corp., 2014 WL 4977562, *12 (S.D. N.Y. Sept. 30, 2014)(that
supervisor did not reach out to plaintiff promptly after plaintiff was hired, did not call him
frequently enough for plaintiff's liking, did not schedule meetings with plaintiff in the manner
plaintiff preferred, and was not as nice to plaintiff as another supervisor, does not show hostility
because of plaintiff's membership in protected class); Zayas-Ortiz v. Becton Dickinson Caribe,
Ltd., 968 F.Supp.2d 463, 474 (D.P.R. 2013)(that supervisor may have acted rudely toward plaintiff
did not give rise to an inference of discriminatory animus).[33]

6.   **Comments**

Contrary to Reeves, there is no evidence of age-related comments from Elpidio directed at
Pierzchajio (or at anybody else).  Pierzchajio states that Elpidio's friends, the "young crowd" with

---

[33] Petty slights, lack of good manners, rudeness and similar categories of behavior have been applied even in the context of
retaliation actions to dismiss them despite the fact that, as is well known, retaliation actions are more favorable to employees than
substantive discrimination claims.  See, Burlington Northern, 548 U.S. at 59-68 (distinguishing between retaliation and substantive
discrimination actions).  In applying those categories across the spectrum of allegedly discriminatory conduct, see Washington v.
Pérez, 2016 WL 3910256, *4 (D. Nebraska July 14, 2016)(petty slights and simple lack of good manners do not support claims of
discrimination, hostile work environment or retaliation); Mixon v. Charlotte-Mecklenburg, 2011 WL 5075808, *4-*5 (W.D.N.C.
Aug. 5, 2011)(complaint premised on nothing more than rude treatment by coworkers and callous behavior by supervisor not
actionable as discrimination or hostile work environment) (Report and Recommendation), adopted 2011 WL 5075622 (W.D. N.C.
Oct. 26, 2011), aff'd 473 Fed.App'x 271 (4th Cir. 2012), cert. denied 568 U.S. 1101 (2013); Wilson v. Emhart Teknologies LLC,
566 F.Supp.2d 120, 125 (D. Conn. 2008)(petty slights insufficient to sustain discrimination and retaliation claim).

whom Elpidio hanged out, "made fun, mocked and gossiped about his old captain" (Docket No. 25 at ¶ 34). As support, he directs the court to pages 156 and 196 of his deposition. Id. At page 156, he was asked if he considered the incident of snagging an anchor from another boat laughing stock in the boating community (Docket No. 16-4, p. 14). He responded he "wouldn't call any incident a laughing stock," adding that "I don't know what people gossip about." Id. at pp. 14-15. And at page 196 he was asked about why he concluded there was age discrimination here, to which he responded that Elpidio interacted with young people on the boat, not with him (Docket No. 16-5, p. 8).

In short, there is no reference to Elpidio's friends making fun or mocking Pierzchajio or gossiping about him. But even if those characterizations had been attested to as Pierzchajio alleges in opposing summary judgment, they could not sustain his claim, for they would be generalizations ("making fun," "mocking," "gossiping") devoid of content and as such, insufficient to be probative of prohibited animus. See, González v. El Día, Inc., 304 F.3d 63, 70 (1st Cir. 2002)(dismissing age discrimination claim in part due to absence of remarks unambiguously reflecting age-based animus). Furthermore, they would consist of no more than stray remarks devoid of meaningful evaluative context. See, Straughn, 250 F.3d at 36 (generalized stray remarks lack probative value absent some discernible evidentiary basis for assessing their temporal and contextual relevance). And they would have been made by people that the evidence does not link to the decision being challenged in this case. See, Smith, 40 F.3d at 14, 18 (comment of person who did not participate in the decision to remove plaintiff from her job or influenced that decision is irrelevant to the issue of discriminatory animus)(citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10

Pierzchajio v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 31

(1st Cir. 1990)("the biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case).[34]

## 7. Hostile Work Environment

Essentially relying on the items described above in connection with the way Elpidio interacted with him, Pierzchajio contends that he was subject to a hostile work environment (Docket No. 16-1 at ¶ 46; Docket No. 16-5, pp. 7, 28).[35]  A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment."  Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003)(quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Whether an environment is hostile or abusive is determined by looking at the totality of circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.  See, Harris, 510 U.S. at 23 (examining topic).  To be actionable, the conduct must be both subjectively and objectively abusive.  Id.

---

[34] Cf. Soto-Feliciano, 779 F.3d at 25-26 (comment by the head of the employer's human resources department, a key decisionmaker, that plaintiff – a hotel chef – was old to work at the cooking line and she was thinking of hiring a new chef in his stead, made while speaking with plaintiff about his job performance approximately three weeks before his termination, considered relevant to issue of whether the employer's reasons for the challenged actions were a pretext for age discrimination).

[35] The complaint does not include a hostile work environment claim, but rather frames the dispute under a disparate treatment theory.  See, "Complaint and Demand for Jury Trial" (Docket No. 1).  The hostile work environment issue arose during Pierzchajio's deposition (Docket No. 16-5, p. 7).  NWS does not state the issue is beyond the scope of the claims brought in the action.  Instead, it discusses the matter on the merits.  See, "Motion for Summary Judgment and Memorandum of Law in Support Thereof" (Docket No. 16 at pp. 19-21).  Pierzchajio does not discuss the topic.  Entry of a summary judgment motion as unopposed "does not automatically give rise to a grant of summary judgment."  Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006).  The court is obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.  Id.  Informed by this perspective, the court examines the merits of the hostile work environment contention.

Pierzchajio v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 32

Pierzchajio may have found the conduct he has referred to as harassing, one he did not welcome.  Nevertheless, as noted earlier there is no evidence linking that conduct to age animus.  Besides, the conduct was not physically threatening, and cannot be objectively considered abusive or humiliating.  More is needed to constitute a hostile work environment.  See, Colón-Fontanez v. Municipality of San Juan, 660 F.3d 17, 44-45 (1st Cir. 2011)(rejecting hostile work environment claim of a plaintiff who alleged that supervisor avoided her, permitted other employees to come and go from her office but required plaintiff to wait, restricted plaintiff's access to her, and refused to amicably greet plaintiff in general encounters, because even though the supervisor's behavior may be described as brusque and even uncivil, it did not materially alter the conditions of plaintiff's employment in violation of discrimination laws); McKenzie v. Milwaukee County, 381 F.3d 619, 624-625 (7th Cir. 2004)(that supervisor failed to greet plaintiff or acted standoffish, unfriendly and unapproachable does not establish an objectively hostile work environment); Gutierrez-Lines v. Puerto Rico Electric Power Authority, 751 F.Supp.2d 327, 342 (D.P.R. 2010)(dismissing hostile work environment claim of plaintiff who complained that, among other things, supervisor spoke sarcastically to him); Zayas-Ortiz, 968 F.Supp.3d at 474 (dismissing hostile work environment claim of plaintiff who stated that supervisor was rude, did not acknowledge her in the morning, and did not talk to her for stretch of two or three weeks except for meetings).[36]

Equally relevant, there is no evidence that Elpidio's manners interfered in any way with Pierzchajio's work performance.  On this end, Pierzchajio states he expected Elpidio's assistant to

---

[36] See also, Meléndez, 622 F.3d at 54 (summary judgment dismissing ADEA claim of plaintiff allegedly ostracized by members of employer's staff, who excluded him from a staff picture and moved his desk away from the lobby); González, 304 F.3d at 70 (summary judgment dismissing ADEA claim of plaintiff who complained about allegedly ageist statements, and although the statements were insensitive and perhaps even rude, those type of statements hardly constitute a self-sufficient foundation for an ADEA claim); Straughn, 250 F.3d at 36-37(insensitive banter insufficient to preclude summary judgment against plaintiff in employment discrimination action).

set up meetings for him with Elpidio the same day but that Elpidio would not see him (Docket No. 16-1 at ¶¶ 36 and 38).  He complains that every client he ever worked with saw him without a prior appointment except Elpidio (Docket No. 16-5, pp. 6-7).  He points out that on one occasion, Elpidio initially confirmed an appointment but then did not see him in the office (Docket No. 24-1, pp. 18-19).  As Pierzchajio explained the incident, a friend of his wanted to start a legal marijuana business in Puerto Rico, asked him who he could partner with, and Pierzchajio thought about Elpidio because he had a distribution center and might facilitate securing the license (Docket No. 16-5, pp. 3-5).  Eventually, Pierzchajio spoke with Elpidio about the topic, which was not work related, on the boat.  Id.

Pierzchajio was asked if he had been able to confirm whether Elpidio's style was not to meet with people individually, to which he responded that he would be speculating, yet attributed Elpidio's behavior to Pierzchajio's age because Elpidio fired Pierzchajio, hired a captain half his age the next day, and treated Pierzchajio as has been described above.  Id.  Despite this elaboration, Pierzchajio could not point to a single instance where Elpidio's conduct was an impediment to Pierzchajio's performance.  See, Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006)(no hostile work environment in part because plaintiff presented no proof that complained of conduct negatively affected her ability to work); Bhatti, 659 F.3d at 74 (dismissing claim of plaintiff who pointed to no effect of alleged hostile work environment upon her work performance); Rodríguez-Cruz v. Stewart Title Puerto Rico, Inc., 209 F.Supp.3d 427, 444 (D.P.R. 2016)(lack of evidence that certain emails caused any impediment to plaintiff's performance of her work duties).  As Pierzchajio admitted, he answered to Elpidio through Elpidio's assistant, and usually met with her at least once a week to go over the boat's business (Docket No. 16-4, p. 21-22).  That other clients of Pierzchajio had different managerial styles is of no consequence.  A

Pierzchajlo v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 34

supervisor's allegedly unprofessional managerial approach is not the focus of discrimination laws.

See, Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46 (1st Cir. 2003)(articulating

formulation).

## B. SUPPLEMENTAL JURISDICTION

Invoking supplementary jurisdiction, Pierzchajlo filed claims under Puerto Rico Law 100

of 1959 and Puerto Rico Law 80 of 1976 (Docket No. 1 at ¶¶ 20, 26, 29).  Law 100 prohibits

discrimination in employment because of various characteristics, including age.  See, P.R. Laws

Ann. tit. 29, § 146 (setting forth prohibition).  Law No. 80 makes certain employers liable for

payment of an indemnity to employees hired for undefined term who are discharged without just

cause.  See, P.R. Laws Ann. tit. 29 § 185a (stating coverage and payment obligation).[37]

NWS moved for summary judgment as to Law 100 (Docket No. 16), and both parties

moved for summary judgment regarding Law 80 (Docket Nos. 16 and 18), which could allow the

court to examine the merits of both claims.  Nonetheless, federal courts may decline to exercise

supplemental jurisdiction over a plaintiff's state claims when the federal claims that gave it original

jurisdiction are dismissed.  See, 28 U.S.C. § 1367(c)(3)(so specifying).  Given that the ADEA

claim will be dismissed, the court will not exercise supplemental jurisdiction over the Law 100

and Law 80 claims.  See, Roche v. John Hancock Mutual Life Insurance Company, 81 F.3d 249,

256-57 (1st Cir. 1996); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

## IV.   CONCLUSION

The ultimate question for summary judgment under the ADEA is whether the plaintiff has

adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired

---

[37] Law 80 contains a general definition of just cause, and provides guidance on the application of this concept to various scenarios, including employee misconduct and performance; and reductions-in-force and shutdowns.  See, P.R. Laws Ann. tit. 29 § 185b.

or suffered a materially adverse action because of his age, that is, whether age was the "but-for" factor in the adverse action at issue. The fatal weakness in Pierzchajio's case is the lack of such evidence. A *prima facie* case plus pretext does not equal age discrimination here. Conflicting accounts of rationales for termination, issues regarding application of NWS' Handbook, and Pierzchajio's degree of knowledge and skills give rise to an inference of pretext favorable to him under Rule56 of the Federal Rules of Civil Procedure. But considering the facts in the light most favorable to Pierzchajio, nothing in the record shows age animus.

Not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining party belongs to a protected class. See, Hoosier v. Greenwood Hospitality Management LLC, 32 F.Supp.3d 966, 979 (N.D.Ill. 2014)(acknowledging principle). Pierzchajio's suspicion "is no substitute for specific evidence that discrimination was involved." Quinones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006). In consequence, the ADEA claim is dismissed with prejudice. See, Céspedes Rodríguez v. Rivera Hernandes, 135 Fed. Appx. 441, 443 (1st Cir. 2005)(dismissing discrimination claim after assuming that plaintiff was terminated on trumped-up charges because the evidence was insufficient to show that pretext masked prohibited discrimination); James, 233 F.3d at 152-153, 157 (summary judgment dismissing discrimination claim even though plaintiff established a *prima facie* case and proffered evidence that could permit a finder of fact to conclude that the employer's given reason might be false, as the evidence did not reasonably support a finding that plaintiff was terminated on account of age). Having disposed of the federal claim, the Law 100 and Law 80 claims are dismissed without prejudice. On this basis, NWS' motion for summary judgment (Docket No. 16) was GRANTED IN PART, and Pierzchajio's motion for partial summary judgment (Docket No. 18) was DENIED.

Pierzchajlo v. Northwestern Selecta, Inc.
Civil No. 17-1682 (PAD)
Opinion and Order
Page 36


**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of May, 2019.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge